UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**JAVIER RODRIGUEZ**
644 Raven Court
Kissimmee, FL 34759

  Plaintiff,

  v.              Case No: 12-CV-215

**TIMBER CREEK RESOURCE, LLC**
5059 North 119th St.         **JURY TRIAL DEMANDED**
Milwaukee, WI 53225

  Defendant.

---

## COMPLAINT

NOW COMES the Plaintiff, Javier Rodriguez, by his counsel, HAWKS QUINDEL, S.C. by Summer H. Murshid and Lynn M. Novotnak, and, as for a Complaint against the Defendant, Timber Creek Resource, LLC, alleges and shows as follows:

NATURE OF THE ACTION

This is an action brought against Timber Creek Resource, LLC under the Americans with Disabilities Act of 1990, 42 U.S.C., §12112, *et. seq.*, as amended by the Americans with Disabilities Act Amendment Act ("ADAAA"), arising from its violations of the Plaintiff's rights resulting from the Defendant's unlawful employment practices on the basis of Plaintiff's disability and to provide appropriate relief to the Plaintiff, Defendant's former employee Javier Rodriguez.

1

Specifically, Timber Creek Resource, LLC discriminated against Mr. Rodriguez by denying him reasonable accommodation of his disabilities, suspending him and ultimately discharging him because of his disabilities.

## JURISDICTION AND VENUE

1. The United States District Court for the Eastern District of Wisconsin has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this case involves a federal question. This action is authorized and instituted pursuant to 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e-5(f)(3).

2. The United States District Court for the Eastern District of Wisconsin is the proper venue pursuant to 28 U.S.C. § 1391(b) as the unlawful employment practices alleged hereafter were committed within the Eastern District.

## CONDITIONS PRECEDENT

3. All conditions precedent to this action within the meaning of Rule 9(c), FED.R.CIV.PRO. have been performed or have otherwise occurred.

4. Plaintiff received a Right to Sue letter from the Equal Employment Opportunities Commission on December 2, 2011, which is attached hereto as Exhibit A.

## PARTIES

5. Plaintiff Javier Rodriguez ("Rodriguez") is an adult male resident of the state of Florida, residing at 644 Raven Court, Kissimmee, Florida 34759. Until July 2011, Plaintiff resided in Milwaukee, Wisconsin.

6. Defendant Timber Creek Resource, LLC, ("Timber Creek") is and was, at all relevant times, a Wisconsin corporation with a principal office address of 5059 North 119th St., Milwaukee, Wisconsin. Timber Creek's registered agent of service is Peter J. Faust, of O'Neil, Cannon, Hollman, DeJong, S.C. located at 111 E. Wisconsin Ave., Suite 1400, Milwaukee, WI 53202.

## ALLEGATIONS

7. Mr. Rodriguez began working as a "chop saw" operator for Defendant on May 12, 2010.

8. On or around June 2010, Mr. Rodriguez began experiencing and exhibiting symptoms of stress, anxiety and depression after he lost his belongings during a 2010 flood and was subsequently evicted from his home.

9. On August 25, 2010, Mr. Rodriguez attempted to hang himself.

10. On August 26, 2010, Mr. Rodriguez sought treatment at the 16th Street Community Health Center in Milwaukee where the treating psychiatrist, Dr. Michael Gorjanc, prescribed Lorezepam and Citalopram Hydrobomide for Mr. Rodriguez's anxiety and insomnia.

11. Throughout the fall of 2010, Mr. Rodriguez continued to experience and exhibit suicidal tendencies, depression, agoraphobia, self-mutilation, and panic attacks.

12. On September 25, 2010, Mr. Rodriguez was admitted to Milwaukee County Department of Health and Human Services, Behavioral Health Division ("Milwaukee Behavioral Health Facility") where he was treated for depression, panic attacks, agitation, visual hallucinations and attempted suicide. Dr. Gorjanc diagnosed Mr. Rodriguez with Bipolar Disorder and Depression. Mr. Rodriguez was discharged on September 26, 2010.

13. On October 4, 2010, Mr. Rodriguez returned to the Milwaukee Behavioral Health Facility with symptoms of schizophrenia and bipolar episodes. Mr. Rodriguez was diagnosed with Post Traumatic Stress Disorder.

14. Mr. Rodriguez is disabled as a result of his conditions, as that term is defined by the Americans with Disabilities Act, 42 U.S.C. § 12112, *et. seq.*

15. Mr. Rodriguez's disabilities substantially limit his ability to work.

16. The serious nature and severity of Mr. Rodriguez's disabilities are permanent.

17. Mr. Rodriguez's disabilities significantly impair a number of major life activities, inter alia, sleeping, thinking, interacting socially, speaking and learning.

18. Mr. Rodriguez's disabilities significantly restrict his ability to perform a class of jobs within the machine operator field.

19. Mr. Rodriguez's disabilities also significantly restrict his ability to perform a broad range of jobs in various classes throughout the entire employment field.

20. During the October 4, 2010 appointment, Rodriguez advised Dr. Gorjanc that he was concerned about missing additional work because of his illnesses because Defendant refused to accept medical excuses and penalized Mr. Rodriguez with points, the accumulation of which could lead to termination.

21. In response to Mr. Rodriguez's concerns on October 4, 2010, Dr. Gorjanc provided Mr. Rodriguez with a return to work notice with permission to resume a normal workload. However, the certificate also stated: "If pt. needs to come to psych emergency, he should not be punished at work." Mr. Rodriguez submitted the certificate to Defendant's Human Resources Manager, Stephanie Mustin, when he returned to work on October 5, 2010.

22. On October 15, 2010, while at work, Mr. Rodriguez experienced a panic attack during which he was shaking and sweating.

23. Mr. Rodriguez approached his "group leader," Reynaldo Santiago, who advised him that he did not look well and should speak to a supervisor about going home.

24. Mr. Rodriguez approached his supervisor Andy Xiang, who sent Mr. Rodriguez to the Human Resources office to speak to Stephanie Mustin.

25. Mr. Rodriguez told Stephanie Mustin that he believed he needed to go to the hospital because he was not well and he asked her to call an ambulance.

26. Stephanie Mustin asked Mr. Rodriguez to step out of the room while she used the phone and within 15 minutes, two police officers arrived.

27. Two police officers arrived at Timber Creek at approximately 9:00 a.m. and spoke to Mr. Rodriguez in the human resources conference room. After speaking to Mr. Rodriguez, the police advised Stephanie Mustin that they would take Mr. Rodriguez to a psychiatric hospital.

28. The officers escorted Mr. Rodriguez off Defendant's premises, in front of co-workers, which humiliated him.

29. Mr. Rodriguez's group leader contacted Mr. Rodriguez's wife and informed her that Mr. Rodriguez had been escorted out of the building by police who were taking him to a psychiatric hospital.

30. Mr. Rodriguez could not see his wife until that evening.

31. The police conveyed Mr. Rodriguez to Psychiatric Crisis Services at the Milwaukee Behavioral Health Facility where he was detained in the custody of the facility until October 19, 2010. He was placed under suicide supervision and heavily medicated.

32. Mr. Rodriguez was held against his will in a hospital room at the Milwaukee County Behavioral Health facility for three days.

33. Mr. Rodriguez was unable to see his children for three days.

34. A state-appointed attorney appeared at a probable cause hearing on behalf of Mr. Rodriguez on October 19, 2010, at which a Probate Court Commissioner determined that he could be released from custody.

35. On October 19, 2010, Mr. Rodriguez was released from the Milwaukee Behavioral Health treatment facility pursuant to a Settlement Agreement and Court Approval signed by the Honorable Patrice Baker.

36. Dr. Gorjanc released Mr. Rodriguez to return to work and resume a normal workload. Mr. Rodriguez's wife, Wendy Rodriguez, delivered his certificate to return to work to Stephanie Mustin on October 19, 2010.

37. On or around October 20, 2010, Mr. Rodriguez called Stephanie Mustin, who informed him that he was not permitted to return to work and that he was suspended without pay until he saw a company doctor.

38. On or around the end of October 2010, a Sensia Healthcare physician, Dr. Cooney, called Mr. Rodriguez and scheduled a fitness for duty examination.

39. On or around early November 2010, Mr. Rodriguez met with Dr. Cooney and underwent a fitness for duty exam. Dr. Cooney advised him verbally that he could return to work if his own doctor, Dr. Gorjanc, agreed that Mr. Rodriguez could return to work. Dr. Cooney also advised Mr. Rodriguez that he would speak to Defendant's human resources department about his return to work.

40. On or around early November 2010, Mr. Rodriguez still had not heard from either Dr. Cooney or Stephanie Mustin regarding his return to work, so he contacted Stephanie Mustin and asked when he would be permitted to return to work.

41. Stephanie Mustin advised Mr. Rodriguez that Defendant would not permit him to return to work because he could no longer run the "chop saw," which had been his job responsibility prior to October 15, 2010.

42. Mr. Rodriguez asked Stephanie Mustin if he could move to a different department, such as the packaging department, to which Stephanie Mustin responded that there were no available shifts or jobs for Mr. Rodriguez to perform.

43. Mr. Rodriguez then asked Stephanie Mustin if she could at least accommodate him by allowing him to work fewer hours so he could have some additional time for his doctor's appointments and would not lose an attendance point each time he went to the doctor. Stephanie Mustin refused, stating that if she did it for him, she would have to accommodate everyone in the same manner and the plant would be empty.

44. On December 1, 2010, Mr. Rodriguez received a letter from Stephanie Mustin terminating his employment. The letter stated:

> [Y]ou attended a Fitness for Duty Medical Evaluation performed by Sensia Healthcare. I am in receipt of the report from your evaluation. Upon review, Dr. Cooney of Sensia Healthcare and Dr. Gorjanc, your psychiatrist, have concurred that you cannot return to work at our company. For this reason, we have terminated your employment effective the date of this letter, December 1, 2010.

45. Mr. Rodriguez immediately contacted his doctor, Dr. Gorjanc, who informed Mr. Rodriguez that both he and Dr. Cooney agreed that Mr. Rodriguez could return to work.

8

Case 2:12-cv-00215-RTR   Filed 03/01/12   Page 8 of 11   Document 1

46. Contrary to the recommendations of both Dr. Cooney and Dr. Gorjanc that Mr. Rodriguez could return to his job, Defendant refused to allow Mr. Rodriguez to return to work.

47. Mr. Rodriguez's medical condition worsened significantly after he was terminated and he continues to exhibit severe symptoms of depression, psychosis, agoraphobia, sleep apnea and panic disorders.

## CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12111, et. seq.

48. Mr. Rodriguez is considered disabled as a result of his conditions as that term is defined by the American with Disabilities Act, 42 U.S.C. § 12112, *et. seq.*

49. Mr. Rodriguez is qualified to perform the essential functions of his job, with or without reasonable accommodation.

50. Mr. Rodriguez suffered adverse employment action because of his disability.

51. By failing and refusing to provide Mr. Rodriguez a reasonable accommodation that would enable him to perform the essential functions of his job, Timber Creek violated 42 U.S.C. §12112(b)(5)(A).

52. By failing and refusing to engage in the "interactive process" to analyze Mr. Rodriguez's limitations and the demands of the job to determine the existence of a reasonable accommodation, Timber Creek violated 29 C.F.R. §1630.9.

53. The effect of the practices complained of in Paragraphs 7-47 has been to deprive Mr. Rodriguez of equal employment opportunities and otherwise adversely affect his status as an employee because of his disabilities in violation of Title I of the ADA, 42 U.S.C. § 12112.

54. The unlawful employment practices complained of in Paragraphs 7-47 were intentional.

55. The unlawful employment practices complained of in Paragraphs 7-47 were done with malice or reckless indifference to Mr. Rodriguez's federally protected rights.

WHEREFORE, Plaintiff Javier Rodriguez respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by providing appropriate back pay, front pay and/or reinstatement, compensatory damages, pre-judgment and post-judgment interest, reimbursement for other benefits and expenses in an amount to be shown at trial;

2. Grant to Plaintiff his attorney fees, costs and disbursements as provided by statute;

3. Grant Plaintiff punitive damages against Defendant; and

4. Grant to Plaintiff whatever other relief this Court deems necessary and proper.

## JURY DEMAND

Plaintiff demands that his ADAAA claim be tried by a jury of his peers.

Dated this 1st day of March, 2012.

                                        HAWKS QUINDEL, S.C.
                                      Attorneys for Plaintiff

                                        /s/ Summer H. Murshid
                                      Summer H. Murshid, SBN 1075404
                                      Email: smurshid@hq-law.com
                                      Lynn M. Novotnak, SBN 1005688
                                      Email: lnovotnak@hq-law.com
                                      222 East Erie St., Suite 210
                                      PO Box 442
                                      Milwaukee, WI 53202
                                      Phone: 414.271.8650
                                      Fax: 414.271.8442

11

Case 2:12-cv-00215-RTR   Filed 03/01/12   Page 11 of 11   Document 1